IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

**STATE OF TENNESSEE v. MARK EDWARD TAYLOR**

**Direct Appeal from the Criminal Court for Knox County**
**No. 62207A     Richard Baumgartner, Judge**

---

**No. E1999-01994-CCA-R3-CD - Decided June 5, 2000**

---

Defendant Mark Edward Taylor was convicted by a jury of one count of Class B felony theft, two counts of Class C felony theft, five counts of Class C felony forgery, and one count of Class D felony forgery, and the trial court merged the two convictions for Class C felony theft into the conviction for Class B felony theft. The trial court subsequently sentenced Defendant as a Range II multiple offender to a total effective sentence of sixteen years. Defendant challenges his convictions, raising the following issues: (1) whether the evidence was sufficient to support his convictions; and (2) whether his convictions are invalid because they were based on the uncorroborated testimony of accomplices. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

WOODALL, J. delivered the opinion of the court, in which RILEY, J. and GLENN, J. joined.

Darrell W. Humphrey, Memphis, Tennessee, for the appellant Mark Edward Taylor.

Paul G. Summers, Attorney General and Reporter, Mark A. Fulks, Assistant Attorney General, Randall E. Nichols, District Attorney General, and William Jeff Blevins, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  FACTS**

David Sherr, operations director for the southeast region for United States Cellular Corporation, testified that in 1995 and 1996, Defendant worked for U.S. Cellular as an accounts payable clerk. As part of his duties, Defendant was responsible for making check requests for invoices. Defendant could make a check request without obtaining authority from anyone else.

Sherr identified a copy of a check for $12,750.00 made out from U.S. Cellular to David L. Edwards of Edwards Enterprises issued December 11, 1995. Sherr also identified an invoice dated December 7, 1995, from Edwards Enterprises to U.S. Cellular for $12,750.00 for a backup generator ordered by Scott McCloud. In addition, Sherr identified a purchase order originated by Defendant

for the purchase of a backup generator by U.S. Cellular from Edwards Enterprises. Further, Sherr identified a check request prepared by Defendant requesting that a check in the amount of $12,750.00 be issued from U.S. Cellular to Edwards Enterprises. Sherr testified that the check request form directed that the check be sent to Defendant in the regional office. Sherr testified that the purchase order from Defendant would have been issued first, and the invoice from Edwards Enterprises would have come in response to the purchase order. Sherr stated that after the invoice was issued, Defendant made the check request and the check was issued in response to the request. Sherr testified that this particular check was endorsed by David Edwards.

Sherr identified checks made out from U.S. Cellular to Jen Gibson of J & T Tower Service for $9,750.00 issued June 27, 1996; for $10,503.00 issued July 24, 1996; for $10,175.00 issued August 13, 1996; for $14,425.00 issued August 29, 1996; and for $12,475.00 issued September 27, 1996. Sherr testified that each of these checks was endorsed by Jennifer Gibson. Sherr also identified corresponding invoices for the amount of each check from J & T Tower Service to U.S. Cellular for services rendered. In addition, Sherr identified invoice coding approval forms filled out by Defendant for each invoice.

Sherr testified that as the only accounts payable clerk employed in the office at that time, it was Defendant's responsibility to ensure that all invoices received were accurate and legitimate. Once Defendant represented that the invoices were accurate and legitimate, Sherr relied on Defendant's representations and approved payment for the amount of the invoices.

Scott McCloud, the operations manager for U.S. Cellular, testified that he authorized the purchase of all backup generators in his area, but he never ordered a backup generator from Edwards Enterprises. McCloud also testified that he did not authorize the payment of $12,750.00 to Edwards Enterprises.

Alan Frye, owner of Vol Market Number Three, testified that his business had cashed the check made out from U.S. Cellular to Jen Gibson of J & T Tower Service for $9,750.00. Frye testified that before the check was cashed, Jennifer Gibson would have been identified as the person who had endorsed the check.

Gerald Stephan, an employee of Check Exchange, testified that he cashed checks for Jennifer Gibson in amounts of $10,503.00; $10,175.00; $14,425.00; and $12,475.00. When he received the first check, Stephan called U.S. Cellular and asked to speak to someone in the accounts payable department. The man who Stephan talked to stated that the check was payment for rental property, which was identical to the explanation given by Gibson.

Jennifer Gibson testified that while Defendant was working for U.S. Cellular, he told her that he was doing some extra work and although he was to be paid for the work, he could not have checks for the work made out to him. Because Defendant had been helping Gibson, she decided to help him by allowing the checks from U.S. Cellular to be made out to her. Thereafter, checks from U.S. Cellular were mailed to Gibson's post office box at Check Exchange.

Gibson testified that she cashed the check for $9,750.00 at Vol Market. Gibson then took the money and gave it to Defendant, although he let her keep some of the money for rent, groceries, and various bills. Gibson subsequently cashed the check for $10,503.00 and she also gave most of the money from this check to Defendant.

Gibson testified that she also cashed the check for $10,175.00 at Check Exchange and she gave most of the money to Defendant. Gibson likewise cashed the check for $14,425.00 at Check Exchange and after she gave all of the money to Defendant, he gave some of it back to her. Further, Gibson cashed the check for $12,475.00 at Check Exchange and after she gave all of the money to Defendant, he gave some of it back to her.

Gibson testified that she eventually became suspicious and she told Defendant that she was not going to help him anymore. Defendant then told Gibson that he had been making invoices and deceiving his boss and no one would be able to discover what he was doing.

David Edwards testified that he cashed the check for $12,750.00 that was made out to Edwards Enterprises and was payable to him. Edwards kept $1,000.00 and gave the rest to Defendant pursuant to an agreement. Edwards testified that sometime before he cashed the check, Defendant told him that he might be receiving a check in the mail. When Edwards received the check and saw that it was made out to Edwards Enterprises, he became suspicious, but he was told that there was nothing wrong with the check and it would be okay for him to cash the check.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the evidence was insufficient to support his convictions for theft and forgery.

Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995). Since a verdict of guilt removes the presumption of a defendant's innocence and replaces it with a presumption of guilt, the defendant has the burden of proof on the sufficiency of the evidence at the appellate level. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

**A.**

Defendant contends that the evidence was insufficient to support his conviction for Class B felony theft.

Under Tennessee law, "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (1997). In addition, theft is a Class B felony "if the value of the property or services obtained is sixty thousand dollars ($60,000) or more." Tenn. Code Ann. § 39-14-105(5) (1997).

Sherr testified that at the time Defendant was employed by U.S. Cellular, Defendant was the only accounts payable clerk in his particular office. Sherr testified that Defendant had the responsibility to ensure that all invoices received were accurate and legitimate and once Defendant represented that the invoices were accurate and legitimate, Sherr relied on Defendant's representations and approved payment for the amount of the invoices. Sherr identified a copy of a check made out to David L. Edwards of Edwards Enterprises and he identified the checks made out to Jen Gibson of J & T Tower Service. Sherr also identified the check request form prepared by Defendant in which he requested that the Edwards check be sent to him. Sherr also identified the invoice coding approval forms filled out by Defendant for each invoice for the Gibson checks. Gibson testified that when she eventually became suspicious and told Defendant that she was not going to help him anymore, Defendant told her that he had been making invoices and deceiving his boss and no one would be able to discover what he was doing. Gibson testified that she cashed the checks for $9,750.00; $10,503.00; $10,175.00; $14,425.00; and $12,475.00 and she gave most of the money to Defendant. Edwards testified that he cashed the check for $12,750.00 and he kept $1,000.00 and gave the rest to Defendant pursuant to an agreement. We conclude that when this evidence is viewed in the light most favorable to the State, as it must be, the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Defendant knowingly obtained more than $60,000.00 of U.S. Cellular's money without its effective consent and with intent to deprive of it of the money. Thus, the evidence was sufficient to support the conviction for theft.

**B.**

Defendant contends that the evidence was insufficient to support his convictions for five counts of Class C felony forgery and one count of Class D felony forgery.

Under Tennessee law, a person commits forgery when the person "forges a writing with intent to defraud or harm another." Tenn. Code Ann. § 39-14-114(a) (1997). In addition, ""[f]orge" means to: [a]lter, make, complete, execute or authenticate any writing so that it purports to: [b]e the act of another who did not authorize that act." Tenn. Code Ann. § 39-14-114(b)(1)(A)(i) (1997). Further, forgery is a Class C felony if the amount involved is between $10,000.00 and $60,000.00 and forgery is a Class B felony if the amount involved is $60,000.00 or more. Tenn. Code Ann. §§ 39-14-105, -114(c) (1997).

Sherr testified that as the accounts payable clerk, Defendant had the responsibility to ensure that all invoices received were accurate and legitimate and once Defendant represented that the

-4-

invoices were accurate and legitimate, Sherr relied on Defendant's representations and approved payment for the amount of the invoices. Sherr also testified that before the checks were issued, Defendant processed each of the invoices in this case for $9,750.00; $10,503.00; $10,175.00; $14,425.00; $12,475.00; and $12,750.00 that purported to be from Edwards Enterprises and J & T Tower Service. Sherr testified that J & T Tower Service was a bogus company that did not exist and Edwards similarly testified that Edwards Enterprises was also a bogus company that did not exist. Further, Gibson testified that Defendant told her that he had been making invoices and deceiving his boss and no one would be able to discover what he was doing. We conclude that when this evidence is viewed in the light most favorable to the State, the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Defendant authenticated the invoices so they purported to be from actual businesses that were really fictitious and he did so with intent to defraud U.S. Cellular. Thus, the evidence was sufficient to support the convictions for forgery.

## C.

Defendant also contends that the evidence was insufficient to support his convictions because much of the evidence upon which the convictions were based came from the testimony of Gibson and Gibson was simply not credible. Essentially, Defendant argues that Gibson's testimony was so illogical that it cannot be believed. However, "[t]he credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the triers of fact." State v. Cribbs, 967 S.W.2d 773, 793 (Tenn. 1998). The jury obviously believed Gibson's testimony.

In this case, Defendant essentially asks us to reconsider the evidence and substitute a verdict of not guilty in place of the verdict found by the jury. That is not our function. Instead, we conclude that a rational jury could have found beyond a reasonable doubt that Defendant committed the four offenses for which he was charged. See Tenn. R. App. P. 13(e). Defendant is not entitled to relief on this issue.

## III. CORROBORATION

Defendant contends that his convictions are invalid because they were based on the uncorroborated testimony of accomplices. Specifically, Defendant argues that the only evidence that he committed the offenses in this case came from the testimony of his accomplices, Edwards and Gibson, and this testimony was not corroborated by any other evidence.

In Tennessee, it is well-settled that a defendant cannot be convicted on the uncorroborated testimony of an accomplice. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). However,

> [t]his corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this

evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration. Id. In other words, "only slight circumstances are required to corroborate an accomplice's testimony." State v. Griffis, 964 S.W.2d 577, 589 (Tenn. Crim. App.1997). Whether an accomplice's testimony has been sufficiently corroborated is a question for the jury. Bigbee, 885 S.W.2d at 803.

We conclude that the other evidence in this case is sufficient to establish at least the "slight circumstances" necessary to corroborate the testimony of Edwards and Gibson. Sherr testified that Defendant had the responsibility to ensure that all invoices received were accurate and legitimate and once Defendant represented that the invoices were accurate and legitimate, Sherr relied on Defendant's representations and approved payment for the amount of the invoices. Sherr also testified that before the checks were issued, Defendant processed each of the invoices in this case. The State also introduced the check request prepared by Defendant requesting that a check in the amount of $12,750.00 be issued from U.S. Cellular to Edwards Enterprises and then be sent to Defendant in the regional office. The State also introduced the invoice coding approval forms filled out by Defendant for each invoice purporting to be from J & T Tower Service. While this evidence was not adequate, in and of itself, to support the convictions, the evidence "fairly and legitimately tends to connect [Defendant] with the commission of the crime[s] charged." Thus, the accomplice testimony was sufficiently corroborated. Defendant is not entitled to relief on this issue.

Accordingly, the judgment of the trial court is AFFIRMED.